Filed 9/11/24  P. v. Novin CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>EMON NOVIN,<br><br>　　Defendant and Appellant. | G062121<br><br>(Super. Ct. No. 17CF2526)<br><br>O P I N I O N |

　　　　　Appeal from a judgment of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge. Affirmed and remanded for resentencing.

　　　　　Bruce L. Kotler, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　　　Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant Emon Novin guilty of two violations of the Vehicle Code, one for driving under the influence of alcohol and causing bodily injury to his passenger and the other for driving with a blood alcohol concentration of .08 percent or higher and causing bodily injury to his passenger, both of which he committed after having suffered a prior conviction for driving under the influence. Novin's sole contention on appeal is the trial court erred by excluding evidence of spontaneous statements within the meaning of Evidence Code section 1240.[1]

For the reasons we explain, on this record, we cannot conclude the trial court abused its discretion by excluding the proffered statements as inadmissible hearsay. However, we have discovered a sentencing error and therefore remand for resentencing with directions explained *post*. We otherwise affirm the judgment.

FACTS

Sometime between 8:00 p.m. and 10:00 p.m. on November 7, 2016, Ava Rosales drove to Novin's Santa Ana apartment building to catch a ride with him to a party in Irvine. Novin had offered to drive Rosales to the party because he was excited about his new black Lexus two-door coupe. Novin only drove Rosales to the party.

At the party, Rosales had a drink before she decided to take a "catnap" in the bedroom because she was tired from work. She was later awakened by Novin, who said he was ready to leave.

Rosales asked Novin whether he had been drinking. Novin indicated he had not been drinking. Novin got into the driver's seat and

---

[1] All undesignated statutory references are to this code.

Rosales got into the front passenger seat of the car; no one else was in the car with them.

Novin started driving back to his apartment building when "all of a sudden," he turned on the music "so loud" and "started speeding very fast." Rosales thought something was "wrong or off" because of his speeding and "the way he was acting towards the music and all acting weird." She begged him to slow down, multiple times; he "just told [her] to shut up, pretty much." Rosales asked him why he was acting "this way." Novin laughed, said, "'Oh, I had [a] couple drinks that finally hit me,'" and increased his speed.

Between five to 10 minutes later, Novin, who had been traveling in the carpool lane of the freeway, crossed four lanes to exit the freeway at the last minute without reducing his speed. Driving at a high rate of speed as he exited the freeway, he lost control of the car and crashed into an electrical box. The collision occurred around 2:30 a.m. on November 8, 2016.

The front passenger side of the car was smashed; Rosales could not get out of the car. Rosales remembered screaming and feeling a very sharp pain.

Novin jumped out of the car right away and told her he was going to go home because his home was very close. He appeared scared. He told Rosales that he had run around the car to see if it was leaking gasoline and had concluded "the car is safe." He told her that if she felt ok, he wanted to go home because he had a drink. He told her he was going to run away and try to say someone else was driving. He stated if she was not injured, he did not want to call the police. Rosales responded, "'No, call the police.'"

Rosales testified she was very lucky a witness to the accident ran toward the car, tried to keep her awake, and called the police. The witness saw the car collide into the electrical box. He went to see if the car's

3

occupants were okay and saw Rosales inside the car and a solitary man standing right next to the car.

Emergency personnel extricated Rosales from the car and transported her to the hospital. Rosales was hospitalized for several months. She has had six back surgeries as a result of injuries she sustained in the collision. She lost feeling in her left leg for one year and had to relearn, inter alia, how to walk. She also suffered head trauma that has affected her vision. At the time of trial, six years after the collision, she remains disabled, unable to work, and in constant pain.

California Highway Patrol Officer Eddie Enriquez was dispatched to the scene of the collision. Novin told Enriquez another vehicle had hit him. Enriquez, however, concluded no other vehicles were involved based on the damage to Novin's car (there was no indication it had been rear-ended) and the witness's statement. Enriquez confirmed Novin was the registered owner of the car and had the keys to the car in his possession. Enriquez concluded Novin had been driving the car at the time of the collision; Novin did not tell Enriquez anyone had been driving the car.

While speaking with Novin, Enriquez noticed Novin appeared intoxicated. His eyes were red and watery, his breath smelled like an alcoholic beverage, and his words were slurred. After conducting field sobriety tests, Enriquez concluded Novin had been driving under the influence and placed him under arrest. Novin's blood alcohol concentration was later determined to be .176 percent.

Novin's roommate and childhood friend, Max Saalberg, testified that "somewhere after midnight" in the early hours of November 8, 2016, he unexpectedly found a man he had previously met as "Chava" pacing in the apartment Saalberg shared with Novin.

4

Saalberg testified Chava seemed flustered and "just out of whack." He was yelling into a cell phone and his speech was "maybe a little anxious." He looked like he had been in a fight because his nose and eyes were swollen. Saalberg did not know why Chava showed up at the apartment that night; Chava did not live with them and this was the first time he showed up unannounced at the apartment.

Novin testified in his defense at trial. He testified that while he and Rosales were at the party, he contacted an acquaintance named "Chava" who he and Rosales met somewhere near the apartment building where the party was located to drive them in Novin's car back to Novin's apartment building. Novin testified that at the time of the collision, he was sitting in the back seat of his car directly behind Chava. Novin testified he did not tell Enriquez about Chava driving because he "didn't want to get him in trouble." Novin stated that at the time he spoke with Enriquez, he was feeling the effects of alcohol on his system and was "pretty sauced."

PROCEDURAL HISTORY

Novin was charged in an amended information with driving under the influence of alcohol causing bodily injury with one prior conviction, in violation of Vehicle Code section 23153, subdivision (a) (count 1), and driving with a blood alcohol concentration of .08 percent or more, causing bodily injury with one prior conviction, in violation of Vehicle Code section 23153, subdivision (b) (count 2). The amended information alleged, as to both counts, Novin unlawfully had a blood alcohol concentration of .15 percent. It also contained the enhancement allegation that, in the commission of each count, Novin personally inflicted great bodily injury on the victim.

In addition, the amended information alleged both counts involved great violence, great bodily harm, the threat of great bodily harm,

5

and other acts disclosing a high degree of cruelty, viciousness, and callousness within the meaning of California Rules of Court, rule 4.421(a)(1). It further alleged Novin was on probation, mandatory supervision, post-release community supervision, and parole when the charged offenses were committed, within the meaning of rule 4.421(b)(4) of the California Rules of Court. Finally, the amended information alleged, as to both counts, Novin was previously convicted of driving under the influence in violation of Vehicle Code section 23152, subdivisions (a) and (b).

The jury found Novin guilty on both counts and found true the enhancement allegations. The trial court granted the People's motion to dismiss the great bodily harm factor in aggravation (Cal. Rules of Court, rule 4.421(a)(1).) Following the bifurcated trial, the jury found true the alleged aggravating factors and prior conviction allegations as to both counts.

The trial court sentenced Novin to a total prison term of five years by imposing the two-year middle term on count 1 and a consecutive three-year sentence for the Penal Code section 12022.7, subdivision (a) enhancement on count 1. The trial court stayed sentence pursuant to Penal Code section 654 on count 2. Novin timely appealed.

DISCUSSION

Novin contends the trial court erred by excluding at trial evidence of statements made by "Chava" to Saalberg that Chava was driving Novin's car at the time of the collision. He asserts the statements should have

been admitted under the spontaneous statement exception to the hearsay rule. (§ 1240.) Novin's contention is without merit.

## I.

### GOVERNING LEGAL PRINCIPLES AND STANDARD OF REVIEW

Section 1240 provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

"For an out-of-court statement to fall within the spontaneous statement exception to the hearsay rule, "'(1) there must be some occurrence startling enough to produce this nervous excitement and render the utterance spontaneous and unreflecting; (2) the utterance must have been before there has been time to contrive and misrepresent, i.e., while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance; and (3) the utterance must relate to the circumstance of the occurrence preceding it.""" (*People v. Mataele* (2022) 13 Cal.5th 372, 410 (*Mataele*).)

"'Whether the requirements of the spontaneous statement exception are satisfied in any given case is, in general, largely a question of fact.' [Citation.] We review the trial court's ruling concerning whether a hearsay statement falls within the spontaneous statement exception for abuse of discretion. [Citation.] "'[T]he discretion of the trial court is at its broadest" when it determines whether an utterance was made while the declarant was still in a state of nervous excitement.'" (*Mataele, supra*, 13 Cal.5th at p. 411.)

7

## II.

### THE SECTION 402 HEARING

In its motion in limine No. 5, the People sought an order excluding any hearsay statements made by Saalberg. In response, Novin's counsel argued Chava made statements to Saalberg the day of the collision that would satisfy the spontaneous statement exception to the hearsay rule under section 1240. The court thereafter held a section 402 hearing to determine the admissibility of the challenged statements.

We summarize Saalberg's testimony at the section 402 hearing as follows. Saalberg testified he and Novin were classmates from first grade through the end of high school. In November 2016, Saalberg and Novin were living together in an apartment in Santa Ana. In the early morning hours of November 8, 2016, "sometime after midnight," Saalberg was in his room when he "heard someone pacing around, almost yelling on the phone." Stating he was "kind of taken back," Saalberg testified "so I go out, and I originally thought it was [Novin] because Chava and him do similarly look alike." But he soon realized it was Chava who he saw in the apartment. Chava looked like he had been in a fight; his nose was red and swollen and "almost looked like it was about to be bruising."

Saalberg's testimony continued, stating Chava appeared "[v]ery flustered." He asked Chava "'[w]hat's going on?'" and Chava "said he had just been in a car accident, and he hit his face on the steering wheel airbag, which is why his face was all bruised and looked like he had been punched almost." Chava told Saalberg that he had been driving Novin when they were rear-ended. Chava told Saalberg that he thereafter walked to the apartment and that Novin had given him the key fob and the apartment key to get into their building.

Saalberg acknowledged at the section 402 hearing he first mentioned these statements to a defense investigator in August 2022, about a month before trial and six months after the collision occurred. Saalberg further acknowledged he does not know Chava's last name or birthdate.

The trial court deemed Saalberg's testimony regarding Chava's statements to him inadmissible. The court explained the requirement "the utterance must have been before there has been time to contrive and misrepresent" (see *Mataele, supra*, 13 Cal.5th at pages 410) had not been satisfied. The court stated, "I think there might have been time if Chava did, in fact, make these statements, that they're not spontaneous." The court indicated Saalberg was permitted to testify regarding Chava's appearance in the apartment that morning, apart from his making any statements.

III.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY EXCLUDING THE PROFFERED SPONTANEOUS STATEMENTS BY CHAVA

The trial court did not abuse its discretion by concluding the spontaneous statement exception did not apply to Chava's purported statements to Saalberg because Saalberg's testimony did not show those statements were made before there had been time for Chava to contrive and misrepresent. The California Supreme Court in *Mataele, supra*, 13 Cal.5th at page 411 explained: "'A number of factors may inform the court's inquiry as to whether the statement in question was made while the declarant was still under the stress and excitement of the startling event and before there was "time to contrive and misrepresent,"' such as 'the passage of time between the startling event and the statement, whether the declarant blurted out the statement or made it in response to questioning, the declarant's emotional state and physical condition at the time of making the statement, and

9

whether the content of the statement suggested an opportunity for reflection and fabrication.'"

Here, Saalberg did not know what time he saw Chava in his apartment on November 8, 2016; he testified he encountered Chava sometime after midnight. Saalberg's testimony does not even establish Chava's statements were made after the collision occurred. Assuming they were made after the collision, the record does not provide any information as to the amount of time that had passed from the time of the collision until Chava spoke with Saalberg. At a minimum, enough time had passed for Chava to get out of the car, walk to Novin and Saalberg's apartment building, key into the building and the apartment, and be in the midst of a conversation on his cell phone before speaking with Saalberg.

Furthermore, according to Saalberg, Chava's statements were made in response to Saalberg interrupting Chava's cell phone conversation and asking Chava what was going on. They were not simply blurted out by Chava.

Finally, although Saalberg described Chava as appearing flustered and injured, the content of Chava's responses to Saalberg's inquiry about what was going on provided further support for the trial court's finding Chava had an opportunity for reflection and fabrication since the collision. According to Saalberg, at the time of their encounter, Chava was able to coherently explain to Saalberg he had been driving Novin home when they were rear-ended, his injuries were caused by the steering wheel airbag's deployment, and that he thereafter walked to the apartment building after Novin gave him the key fob and apartment key to get into the apartment.

In light of the foregoing testimony, and "[g]iven that the discretion of the trial court '"is at its broadest"' when it determines the

10

declarant's mental state" (*Mataele, supra*, 13 Cal.5th at p. 412), we cannot conclude the trial court abused its discretion when it excluded evidence of Chava's statements as inadmissible hearsay.

We do not address the trial court's additional analysis and conclusion the proffered statements were also inadmissible under sections 1230 and 1252 because Novin does not argue for their admissibility under those code sections.

IV.

WE REMAND FOR RESENTENCING UNDER PENAL CODE SECTION 654

In imposing sentence on count 2, the trial court stated it "stay[ed] sentence pursuant to Penal Code [section] 654 on count(s) 2." The pronouncement of sentence on count 2 constituted error because "[w]hen a court determines that a conviction falls within the meaning of Penal Code section 654, it is necessary to *impose* sentence and to stay the *execution* of the duplicative sentence." (*People v. Mani* (2022) 74 Cal.App.5th 343, 380.) As the court's error resulted in an unauthorized sentence, it may be corrected at any time. (*People v. Sanders* (2012) 55 Cal.4th 731, 743, fn. 13 ["[I]t is well established that the appellate court can correct a legal error resulting in an unauthorized sentence (including a misapplication of [Penal Code] § 654) at any time"].) We invited the parties to file supplemental briefs addressing this issue as neither did so in their appellate briefs; each party filed a responsive supplemental brief.

Penal Code section 654, subdivision (a), as most recently amended by Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441, § 1), provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either

11

of such provisions, but in no case shall the act or omission be punished under more than one provision."

We therefore remand to the trial court for resentencing so the court may select and impose a sentence on count 2, and then stay execution of sentence on either count 1 or count 2 pursuant to the current version of Penal Code section 654, subdivision (a).

## DISPOSITION

The matter is remanded to the trial court to impose sentence on count 2 and then exercise its discretion to stay execution of sentence on either count 1 or count 2 pursuant to Penal Code section 654, subdivision (a). The trial court is directed to thereafter prepare an amended abstract of judgment and forward certified copies of the amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.



MOTOIKE, J.

WE CONCUR:


GOETHALS, ACTING P. J.


GOODING, J.